## STATE OF ARKANSAS *v.* STATE OF MISSISSIPPI.

### IN EQUITY.

No. 6, Original. Motion for confirmation of report of commissioners and suggestions in support of same submitted February 28, 1921.— Final decree entered Apirl 11, 1921.

Decree reciting report of the commissioners heretofore appointed to run, locate and mark the boundary between Arkansas and Mississippi involved in this case; overruling the exceptions thereto filed by Mississippi; confirming the report; establishing the boundary as set forth by the said report and upon the map accompanying the same; and allowing the expenses and compensation of the said commissioners as part of the costs of this suit to be borne equally by the parties, etc.

*Mr. J. S. Utley, Mr. John M. Moore* and *Mr. Herbert Pope* for complainant.

*Mr. Marcellus Green, Mr. Gerald Fitzgerald* and *Mr. Garner W. Green* for defendant.

By the COURT: [1]

The State of Arkansas, having moved the court to take up for consideration the exceptions filed by the State

---

[1] Announced by Mr. Justice Day.

of Mississippi to the report of the Commissioners appointed by the decree in this cause on the twenty-second day of March, 1920, (252 U. S. 344) to run, locate, and permanently mark the boundary line between the States of Arkansas and Mississippi; and the State of Mississippi, having filed certain exceptions to said report, which report is in the words and figures following, to wit:

*"To the Honorable Chief Justice and the Associate Justices of the Supreme Court of the United States:*

We, Samuel S. Gannett, Washington, D. C.; Charles H. Miller, Little Rock, Arkansas, and Stevenson Archer, Jr., Greenville, Mississippi, Commissioners appointed under the decree of the court, rendered March 22, 1920, 'to run, locate and designate the boundary line between said States along that portion of said river which ceased to be a part of the main navigable channel of said river as the result of said avulsion, in accordance with the above principles: Commencing at a point in said Mississippi River about one mile southwest from Friar Point, Coahoma County, Mississippi, where the main navigable channel of said river, prior to said avulsion, turned and flowed in a southerly direction, and thence following along the middle of the former main channel of navigation by its several courses and windings to the end of said portion of said Mississippi River which ceased to be a part of the main channel of navigation of said river as the result of said avulsion of 1848,' have the honor to submit the following report, which report is accompanied by a map entitled:

Supreme Court of the United States, October Term, 1919. No. 7, Original. Map Showing Boundary Line Between States of Arkansas and Mississippi Below Friar Point, Mississippi.

On account of a continuous high stage in the Mississippi River it was impracticable to carry on any field-work previous to August 1, 1920, but in the meantime the

record was read, local data and maps were examined, and preliminary investigations made in the field.

The Commissioners met at Friar Point, Mississippi, August 4, 1920, and proceeded to view the ground and formulate a plan of procedure.

The determination of the boundary line proceeded upon the finding of the law as laid down by the court, namely, that if the former channel of a river separating two States ceases to be navigable by reason of an avulsion, it does not render inapplicable the rule which fixes as the boundary line the middle of the navigable channel rather than the middle line between the banks (State of Arkansas vs. State of Tennessee, 246 U. S., page 158, sec. 4).

After a study of all the evidence in the case and a careful examination of the physical facts on the ground at this time, the Commissioners are unanimously of the opinion that 'Horseshoe Lake' or 'Old River' or 'Pecan Lake' was, at the time the avulsion or cut-off took place, the main navigable channel of the Mississippi River, and therefore this portion of the boundary line should follow in general the deepest water in this lake.

Leaving the west or lower end of Horseshoe Lake, the boundary line as determined by your Commissioners follows, in general, the course of the present 'channel' or well-defined chute which runs in a northeasterly direction to the Mississippi River, because the evidence on the ground (namely, well-defined high banks on both sides for practically the entire distance, both of which are covered with timber of about the same age; its location west of the meander line of 1833 near the 'Horseshoe Lake' where caving would be expected, and its location east of the meander line of 1833 at a point farther north where accretion would be expected) clearly indicates that this was the last channel actually navigated by the steamboats that entered the 'Horseshoe Lake' several years after the avulsion or cut-off of 1848.

28.                    Final Decree.

In arriving at the proper location for the line between the northeast end of 'Horseshoe Lake' and the Mississippi River at a point about one mile southwest from Friar Point, we considered the following facts and conditions:

(*a*) The Arkansas shore, being in a concave bend, would naturally undergo some caving or recession during the 32 years between the date of the original land survey (1816) and the date of the cut-off (1848).

(*b*) The 'slough' immediately east of the field in sections 10 and 15, township 4 south, range 4 east, being totally devoid of short and irregular bends and following a generally uniform curve of radius similar to that of the original river in this vicinity, was, without doubt, formed by the main river, and the great difference in the age of the timber on the west bank as compared with the age of that on the east bank shows that the west bank of this 'slough' marked the most westerly limit of the main river at the time of the avulsion.

(*c*) The Mississippi land survey of 1835 shows that an island existed at that time near to the Mississippi shore or meander line; evidence on the ground today shows conclusively that this portion of the area is much older than is that part which lies farther to the west. The conformation of the old bank lines is such that accretion to the Mississippi shore in this vicinity is a logical sequence.

We have therefore decided that this line after leaving the northeast end of 'Horseshoe Lake' should gradually swing over towards the northwest and follow the general line of the 'slough,' but in front, or east, of the same, a distance which is approximately equal to that which is ordinarily found between the main bank and the line of deepest water in the Mississippi River.

After reaching a point which is opposite the upper end of this 'slough' we must, in order to reach the present river, cross over, for a distance of approximately a mile, land that has evidently been formed by the process of

accretion since the time of the avulsion, and hence the boundary line should be brought east, as soon as is practicable, to a point about midway between the old original meander lines, and thence along this mid-line to the Mississippi River.

Commencing at a point in said Mississippi River, approximate latitude 34° 22′ 18″, longitude 90° 39′ 19″, about one mile west from Friar Point, we herewith specifically describe the boundary line as follows:

S. 30° W. 6,831 feet, or 103.50 chains, to monument (1).

S. 0° W. 2,587 feet, or 39.20 chains, to monument (2).

S. 23° E. 5,035 feet, or 76.29 chains, to monument (3).

S. 11½° E. 4,927 feet, or 74.65 chains.

S. 25° W. 2,805 feet, or 42.50 chains.

S. 70¼° W. 2,607 feet, or 39.50 chains.

N. 88½° W. 2,290 feet, or 34.70 chains.

N. 68¼° W. 2,607 feet, or 39.50 chains.

N. 51° W. 1,571 feet, or 23.80 chains.

N. 34° W. 1,733 feet, or 26.25 chains.

N. 4° W. 2,676 feet, or 40.55 chains.

N. 12¼° E. 3,383 feet, or 51.25 chains.

N. 31½° E. 3,317 feet, or 50.25 chains.

N. 22¼° E. 2,864 feet, or 43.40 chains.

N. 15° E. 5,148 feet, or 78.00 chains to a point in the Mississippi River, approximate latitude 34° 22′ 04″, longitude 90° 40′ 35″.

### Monuments.

Monuments have been set as follows:

#### State Line Monument No. 1.

Situated in southeast quarter of Sec. 10, T. 4 S., R. 4 E., 600 feet east of west bank of slough and on north side of road through timber-reinforced concrete post 12 inches square, 36 inches high, set on a concrete base 24 by 24 by 24 inches.

Monument marked on west side ARK, on east side MISS, on north side 1920, on south side No. 1.

28.                    Final Decree.

### State Line Monument No. 2.

Situated 2,587 feet due south of State line Mon. No. 1 and is in the N. E. ¼ Sec. 15, T. 4 S., R. 4 E. A reinforced concrete post 12 inches square, 36 inches high, set on a concrete base 24 by 24 by 24 inches.

The monument is marked on west side ARK, on east side MISS, on north side 1920, on south side No. 2.

### State Line Monument No. 3.

Situated 5,035 feet S. 23° E. from Monument No. 2 and 2,375 feet west of a point 100 feet south of levee mile post 72-73. It is in north part of Sec. 23, T. 4 S., R. 4 E., a few feet south of line of Sec. 14, T. 4 S., R. 4 E. It is a reinforced concrete post 12 inches square, 36 inches high, set on a concrete base 24 by 24 by 24 inches.

This monument is marked on west side ARK, on east side MISS, on north side 1920, on south side No. 3.

Witness trees: Cottonwood 24 inches diameter bears N. 56° E. 47 feet distant; hackberry 3 inches diameter bears N. 46° E. 6 feet distant. Overcup oak 10 inches diameter bears N. 65° ½ W. 38.5 feet distant.

### Reference Point No. 1.

1,025 feet north of corner of Secs. 7 and 18, T. 28 N., R. 4 W., and Secs. 12 and 13, T. 28 N., R. 5 W.

Reinforced concrete post 12 inches square, 36 inches high, set on concrete base 24 by 24 by 24 inches.

Monument is marked on north side REF. PT. No. 1, on south side 1920.

From this monument middle of old River or Horse Shoe Lake or State line bears N. 40° W. 1,353 feet.

### Reference Point No. 2.

At ¼ corner between Secs. 10 and 11, T. 28 N., R. 5 W.

Reinforced concrete post 12 inches square, 36 inches high, set on concrete base 24 by 24 by 24 inches.

Monument marked on north side REF. PT. No. 2, on south side 1920.

Witness trees: Cottonwood, 14 inch diameter, N. 42°

E. 78.6 feet; cottonwood, 24 inch diameter, S. 66° ¼ W. 33.1 feet.

From this monument middle of old River or Horse Shoe Lake or State line bears N. 67° ¾ E. 1,353 feet.

Reference Point No. 3.

At corner of Secs. 2, 3, 34 and 35, Tps. 28 and 29 N., R. 5 W.

Iron post 6 feet long, 2 inches in diameter, set 3 feet in ground.

Witness trees: A sycamore 18 inches diameter bears N. 23° W. 18.3 feet distant; a boxelder 12 inches diameter bears S. 83° ¾ W. 23.2 feet distant.

From this reference point or monument the State line or middle of channel or Horse Shoe Lake is 808 feet due east.

We return herewith a financial statement showing in detail the money actually expended by the Commissioners for running, locating, and designating the boundary line under the decree in this case, including the per diem compensation of the Commissioners.

Respectfully submitted,

SAMUEL S. GANNETT,
CHAS. H. MILLER,
STEVENSON ARCHER, JR.,
*Commissioners."*

The cause coming on to be heard upon said motion of the State of Arkansas, and exceptions of the State of Mississippi, it is ordered, adjudged, and decreed that the exceptions filed on behalf of the State of Mississippi be and the same are hereby overruled, and said report is in all respects confirmed.

It is further ordered, adjudged, and decreed that the line as delineated and set forth in said report, and upon the map accompanying the same, which line has been marked by permanent monuments, as stated in said

report, be and the same is hereby established, declared and decreed to be the true boundary line between the States of Arkansas and Mississippi, and said map is directed to be filed as a part of this decree. And it appearing that the expenses and compensation of the Commissioners attendant upon the discharge of their duties, amount to $6,116.45, it is ordered that the same be allowed and approved as a part of the costs of this suit to be borne equally by the parties. And it appearing further from the report that the State of Arkansas has paid said sum, it is hereby ordered that it be credited to the State of Arkansas in the settlement of the costs of this suit between the States of Arkansas and Mississippi. It is further ordered that the Clerk of this Court do transmit to the respective Governors of the States of Arkansas and Mississippi copies of this decree, duly authenticated, and under the Seal of this Court, omitting from said copies the map filed with the report.